**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| LAMAR SHAW, | : | |
| | : | Civil Action No. 08-3570 (RMB) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner pro se
Lamar Shaw
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

Counsel for Respondent
Irene E. Dowdy
Asst. U.S. Attorney
401 Market St., Fourth Floor
Camden, NJ 08101

**BUMB**, District Judge

　　Petitioner Lamar Shaw, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey,[1] has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[2] challenging the results of a prison disciplinary

---

　　[1] Respondents state that Petitioner has been transferred to the Federal Correctional Institution at Jesup, Georgia. Petitioner has not filed a change of address.

　　[2] United States Code Title 28, Section 2241, provides in pertinent part:
　　　　(a) Writs of habeas corpus may be granted by
　　　　the ... district courts ... within their
　　　　respective jurisdictions ...
　　　　(c) The writ of habeas corpus shall not
　　　　extend to a prisoner unless- ... (3) He is in

proceeding. The respondents are Warden Grondolsky and the United States of America.

For the reasons set forth below, the Petition will be denied.

## I.  BACKGROUND

In 2001, Petitioner was sentenced to a term of 188 months imprisonment following conviction on narcotics charges in the U.S. District Court for the Western District of North Carolina. Petitioner presently is confined pursuant to that conviction and sentence. Petitioner's projected release date is April 9, 2014.

While Petitioner was confined in the Federal Prison Camp in Atlanta, Georgia, Bureau of Prisons staff issued Incident Report 1453287, charging Petitioner with (a) Conduct Which Disrupts the Security of the Institution, Most Like Code 200, Escape (Code 299/200), and (b) Receiving Money from Any Person for Any Illegal or Prohibited Purpose (Code 217). The essence of the charge was that Petitioner had taken money to assist prisoners in departing from the camp for several hours at night.

On May 10, 2006, the Disciplinary Hearing Officer at that institution conducted a hearing. At Petitioner's request, a BOP staff member appeared at the hearing as Petitioner's representative. Earlier, Petitioner had requested several

---

> custody in violation of the Constitution or laws or treaties of the United States ... .

witnesses; those witnesses were not available at the time of the hearing, and Petitioner waived the presence of witnesses at that time.  The DHO found that the acts were committed as charged and imposed disciplinary sanctions including, <u>inter</u> <u>alia</u>, disallowance of 54 days good conduct time.  The other sanctions imposed included a recommendation for disciplinary transfer, 60 days disciplinary segregation, and 90 days loss of commissary, visiting, and telephone privileges.  Petitioner subsequently was transferred to the Federal Correctional Institution at Fort Dix, New Jersey.  There, Petitioner pursued his administrative remedies,[3] which were unsuccessful.

Thereafter, Petitioner filed a federal petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the results of that disciplinary proceeding.  <u>See</u> <u>Shaw v. United States</u>, Civil Action No. 07-1109 (RMB).  While that petition was pending, BOP staff in Atlanta determined that Incident Report 1453287 should be rewritten and reissued to Petitioner.  The rewritten Incident Report charged Petitioner with the offense of Giving or Receiving Money (Code 328), a less serious offense than originally charged.

---

[3] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."  28 C.F.R. § 542.10, et seq.  Appeal to the General Counsel is the final administrative appeal.  28 C.F.R. § 542.15(a).

The rewritten Incident Report was forwarded to BOP staff at FCI Fort Dix.

On August 23, 2007, a DHO at FCI Fort Dix conducted a new hearing on the rewritten Incident Report. Again, a BOP staff member appeared as Petitioner's staff representative. The Hearing Officer's Report indicates that Petitioner requested witnesses, but that he did not have the register numbers of the witnesses and that he believed some of the witnesses may have been released.[4] (Resp. Ex. 7.) The FCI Fort Dix DHO considered both the record compiled in the initial investigation[5] and inmate statements compiled by Petitioner. The FCI Fort Dix DHO found the inmate statements not credible because "these written statements were all exactly the same and written in the same handwriting with only signatures of the inmates and a witness. These statements appear to be made under duress and do not appear credible." Based upon the evidence, the FCI Fort Dix DHO found that Petitioner had committed the offense of Giving or Receiving Money and imposed sanctions including, inter alia, disallowance

---

[4] Petitioner requested three inmate witnesses: Bobby Ingraham, Derrick Ward, and an inmate identified only by his first name "Anthony." Petitioner asserted that these three witnesses could testify that he "had no dealings with Gerry Allen and Varian Martin" (two of the inmate witnesses against Petitioner).

[5] The record compiled in the initial investigation included, among other items, two reports by a Special Investigative Agent detailing inmate interviews, including statements by several inmates implicating Petitioner in the charged offense.

of 13 days good conduct time.  The other sanctions included 15 days of disciplinary segregation (45 days less than the 2006 sanction) and 90 days loss of commissary privileges (the same loss of commissary privileges as under the 2006 sanctions, but no loss of visiting or telephone privileges).  These sanctions superceded the sanctions imposed previously in Atlanta.  Because of the intervening events, the previous habeas petition was dismissed as moot.

Following exhaustion of his administrative remedies, Petitioner has now filed this new Petition for writ of habeas corpus, challenging the results of the disciplinary proceeding with respect to the rewritten incident report.  Here, in shotgun fashion, Petitioner alleges that he is actually innocent of the charged offense, that the DHI's sanction is based upon a disjunctive theory and it is impossible to tell under which theory Petitioner was sanctioned, and that the sanction is based upon retaliation.  Petitioner alleges that he did not make the statement attributed to him by the DHO, in which he acknowledged that "someone" was getting paid, but not him.  Petitioner alleges that the DHO improperly used the existing record from the expunged incident report to find Petitioner guilty of the rewritten incident report.  He also asserts that the sanction is not supported by sufficient evidence because no money was admitted into evidence to support the statements of other

5

inmates.  Petitioner asserts that he should have been given the opportunity to call other inmates as witnesses and to cross-examine them.

Petitioner seeks return of the 13 days lost good time credits.

## II.  LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

III.   ANALYSIS

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ...  In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or from state or federal law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[6] "the prisoner's interest has real substance and is

---

[6] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison.  Congress, however, has provided that federal prisoners serving a term of

sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[7] and (3) a written

---

imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct. See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

[7] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing. To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that

8

statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. Id. at 569-70. Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member. Id. at 570.

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[8]

---

claimed defect in the hearing. See Ponte v. Real, 471 U.S. 491 (1985). "{P]rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals. ... [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

[8] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq. See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

Here, the procedures afforded Petitioner met with the requirements of due process and the decision of the DHO was supported by the required quantum of evidence.  Petitioner was given the proper advance notice of the charge, he appeared with a staff representative and made a statement, he was given a statement of the reasons for the decision against him, and he was afforded appropriate administrative appeals.  The statements of inmates Jason Head, Varian Martin, and Jerry Allen directly implicated Petitioner in the charged act of receiving money to assist inmates in leaving the camp.  That inmates were leaving the camp at night was established by surveillance video and by other inmate statements.  This evidence is sufficient to sustain the DHO's finding.

Although Petitioner requested witnesses, he failed to provide adequate identifying information and he acknowledged that some of them might have been released.[9]  In any event, in light of the witness statements made during the initial investigation, as corroborated by surveillance video of prisoners leaving the camp, the proffered testimony of the witnesses would have been

---

[9] The Federal Bureau of Prisons Inmate Locator indicates that a prisoner by the name of "Robert Ingraham" was released on May 18, 2007, before the hearing on the rewritten incident report.  The Inmate Locator reflects that four prisoners by the name "Derrick Ward" have been confined by the BOP, with release dates of July 2, 2004, December 1, 2006, October 15, 2008, and unknown.  The third witness was identified only by his first name, "Anthony."

merely cumulative testimony contradicting the witness statements implicating Petitioner and would not otherwise have cast doubt on those other statements.

Petitioner is not entitled to relief.

## IV. CONCLUSION

For the reasons set forth above, the Petition will be denied. An appropriate order follows.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: March 30, 2009